### OAKES v. MASSEY.

(Supreme Court, Appellate Division, Fourth Department. May 10, 1904.)

1. WILLS—INTENTION OF TESTATOR—ESTATES CREATED—CONSTRUCTION.

Testator's family consisted of himself, a wife, a daughter, and her husband. The daughter was a confirmed invalid, with no expectancy of issue. The will gave testator's wife a life estate in corporate stocks and in his residence, and created an annuity in certain real estate in favor of the wife in the sum of $2,500, and there was a provision that, in case the daughter should survive the wife, she should receive the annuity to the extent of $2,000. A residuary clause recited that testator gave all property not otherwise disposed of absolutely to his wife. His only property save that specifically disposed of was less than $1,000 in banks, while the value of the total estate was about $16,000. *Held*, that the evident intention of the testator was, in view of all the facts and circumstances, to give the wife an absolute estate, rather than a life estate.

Appeal from Special Term, Jefferson County.

Action by Rensselaer A. Oakes, as administrator with the will annexed of John A. Sherman, against George B. Massey. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

H. W. Steele, for appellant.
E. C. Emerson, for respondent.

HISCOCK, J. Plaintiff brought this action to recover the possession of certain stocks from the defendant. He claimed that they were part of and belonged to the estate of John A. Sherman, which he represented. The defendant, upon the other hand, claimed that they belonged to the estate of one Julia A. Sherman-Hunt, who was the widow of said Sherman, and who left a will appointing defendant her executor. The controversy thus framed involves the construction of certain clauses in Mr. Sherman's will, and the specific question is whether a life interest which he left to his widow in certain property, including said stocks, was by a subsequent and residuary clause turned into an absolute bequest and devise. If such is the case, plaintiff is not entitled to recover the stocks in question. The learned trial court adopted plaintiff's theory and version, reaching the conclusion

that the testator did not, by the residuary and subsequent clause in his will, affect or enlarge the life interest which he gave by the prior clause, and that plaintiff became entitled to the stocks upon the death of the widow. We think that this determination is erroneous, and that the judgment based thereon must be reversed. By the second clause of his will Mr. Sherman gave to his wife, defendant's testatrix, what is conceded to have been a life estate in his residence, situate in Watertown, and also the use and enjoyment for life of certain personal property, including $3,000 of the capital stock of the Agricultural Insurance Company, $1,500 of the capital stock of the National Union Bank of Watertown, and five shares of the capital stock of the American Express Company, and which stocks are the specific property in dispute in this suit. He also, in connection with a devise of certain real property in the city of Watertown to the Young Men's Christian Association, created an annuity for her benefit of $2,500. The will contained other bequests for the benefit of his daughter and sisters, and provisions in considerable detail with reference to the management of said real property by said association. Then followed the clause under construction, which provides:

"And I further give and bequeath any other property not herein otherwise before disposed of that may be in my possession at the time of my decease to my wife, Julia Ann, first to liquidate any indebtedness that may be against me, the balance if any to be at her sole disposal."

At the time the will was made the testator had no property of any account other than that specifically mentioned in the will, except some cash in the bank. At the time of his death he owned no real estate other than that mentioned in his will, and his personal property included less than $1,000 of cash in the banks, and some increase in the amount of stocks held by him at the time of the execution of his will. It is estimated that if the wife's life interest, as created by the prior clauses in the will, was turned into an absolute estate, it would amount to about $16,000, outside of the residence and annuity. There can be no serious question but that the language of the residuary clause literally read in the sense ordinarily attached to the words employed is broad enough to cover and include the property mentioned in the original bequest and devise to the wife, and to turn her interest and estate into an absolute one, instead of for life. It is urged, however, that we should not necessarily thus read said residuary clause, but that we should endeavor to ascertain whether it was the intention of the testator to effect such an alteration in the disposition of his estate.

There are certain fundamental and simple rules applicable to the construction of a will which are conceded and invoked by both parties to this contest, and which are so well settled that they may be stated and assumed without the citation of authorities. Unless a plain intention to the contrary appears, a general residuary clause operates and carries to the residuary devisee all reversionary interests and remainders in the property. It is to be presumed that a testator intended to dispose of all of his estate, and not die intestate in respect to any thereof. There is a presumption against the intention upon the part of the testator to disinherit a child. The testamentary inten-

tion may be gathered not only from the will itself, but from the situation of the testator at the time of its execution, both with reference to his property and his family surroundings. Having these principles in mind, let us see what was the situation of Mr. Sherman at the time he executed the will and drafted the clause in dispute. He was at that time (January 1, 1877) a man nearly 70 years old. His only family consisted of a wife and daughter and her husband. The amount and situation of the property has already been sufficiently referred to. His daughter had been married in 1863. She had become a confirmed invalid. She had never had any children, and, as subsequent events confirmed, there was no reason to expect that she would ever have any. She and her husband lived with the father and mother until the death of the former in 1882, and then with the latter until 1896, when the daughter died, and the husband moved off. So far as appears, the daughter's husband had no business, and, as would seem to be suggested by the failure of the testator to appoint him, the only man in the family, one of his executors, had not established any commanding position in the respect and affection of his father-in-law. Apparently the testator had implicit confidence in his wife, and every reason to expect that so long as she lived she would care for the invalid daughter, and that she was liable to survive the latter, as in fact she did. Then, having these facts and surroundings in mind, let us consider further what the will accomplished upon the theory urged by the defendant that the residuary clause did operate for the benefit of the wife, and enlarge her estate into an absolute one. If she survived the testator, and saw fit, having an absolute estate in the property in question, she could will or bequeath all or part of it to the daughter if the latter outlived her. In the event that the daughter outlived the mother, and was not provided for by the latter, there came into effect the provision in the will by which the annuity given to the mother during life with a reduction by the amount of $500 was given to the daughter for life. It would thus seem that under the circumstances the father sufficiently and amply provided for the care and support of his daughter, and that the argument which respondent especially urges that defendant's construction of the will would result in cutting off the daughter from a fair participation in the benefits of her father's estate is not well founded. We can scarcely avoid believing that the testator, in making his will, relied upon his wife after his death to extend that care and support to her invalid daughter which she in fact did extend, and that he felt that it was perfectly safe to bequeath the bulk of his property absolutely to his wife, and rely upon this disposition upon her part towards her own daughter. He safeguarded the contingency of a survival by the daughter of her mother without adequate provision by the latter by the annuity, which was of a sufficient amount to properly provide for the wants of the daughter. We can readily believe that the surroundings of the testator suggested other considerations in favor of the bequest and devise of the bulk of his estate to his wife. If his property went to her, he could assume that, after providing for herself and her daughter, any remainder in the natural course of events would go back to the relatives of himself and his wife. Upon the other hand, property left abso-

lutely to his daughter, in the failure of children, which must have been anticipated, would naturally pass to her husband, and thus be diverted to people who were strangers to his blood, and possibly to his affections. We think that confirmation of the construction favored by us may be found in the form and preparation of the will. The latter was written by the testator himself. He was not a lawyer, but a man of considerable business experience, and he provided in considerable detail for the disposition and management of his property after his death, as witness the clauses devising his real estate to the Young Men's Christian Association. His daughter was before his mind when he wrote the will, as is sufficiently evidenced by the various references to her and clauses in her behalf. In view of the care and particularity with which he provided for the disposition of his property, it is difficult for us to believe that he, if he had desired to have the property and stocks, originally left to his wife for life, pass upon her death in remainder to his daughter, he would have omitted to say so. The will bears such evidence of careful consideration and attention to details in its preparation that it seems quite incredible that the testator, having his daughter fully and distinctly in mind, would have elected to provide for her by intestacy as to certain property, rather than by express provision in her behalf. The residuary clause was originally written upon a separate piece of paper, and duly pasted and attached to the original will after it had been prepared. Very possibly, as suggested by the learned counsel for the respondent, the testator by it designed to take care of any property which he might acquire between the execution of his will and his decease. We cannot resist the conclusion, however, that, in addition to this, he appreciated that he had created only a life estate for his wife in certain property; that, even if he entered upon the drafting of his will with a different idea with reference to the disposition of said property after her death, he abandoned it before the composition of the residuary clause; and that when he finally prepared and attached the latter he intended to secure just what that clause upon its face does purport to accomplish—a disposition of all of his property which had not otherwise been disposed of.

Counsel upon either side with much care and diligence has cited to us numerous authorities thought to control or bear upon the disposition of this case. We have not reviewed them in this opinion, as, indeed, it would be difficult to do without going to undue lengths. It is oftentimes difficult in a consideration of one will to secure much help from what may have been decided with reference to another. The general principles of interpretation are simple and well understood. The difficulty arises in their application, and each case must largely be decided by the particular facts and circumstances which therein appear. The present case is not entirely free from doubt or difficulty, but, giving to all of the facts and circumstances what seems to be a just and proper consideration, we find ourselves led to the conclusion that the defendant is right in his position, and is entitled to a judgment in his favor.

Judgment reversed, and new trial granted, with costs to appellant to abide event upon questions of law and fact. All concur.